# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **RICHARD BERNARD MOORE,** | )<br>)<br>) |
| *Plaintiff,* | )<br>) **Case No.: 3:24-cv-05580-MGL-TER** |
| v. | )<br>) **DEATH PENALTY CASE** |
| **HENRY D. McMASTER,** in his personal capacity and in his official capacity as the Governor of South Carolina, | ) **Execution date: November 1, 2024**<br>)<br>)<br>) |
| *Defendant.* | )<br>) |

## PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff Richard Bernard Moore, through undersigned counsel, submits the following reply to Governor McMaster's Response to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. ECF No. 18. McMaster attempts to minimize his statements regarding his intent to deny clemency to Moore before clemency was requested and maximize his alleged unreviewable authority as the Chief Executive of South Carolina. A fair review of McMaster's statements regarding Moore's case and application of the United States Supreme Court's constitutional commands regarding clemency demonstrates that allowing McMaster to decide Moore's clemency application would be a violation of due process. Accordingly, Moore is likely to succeed on the merits and this Court should grant a preliminary injunction to allow adjudication of this case before Moore's execution, scheduled for **November 1, 2024.**

### I. Defendant largely ignores and mischaracterizes his own actions that are unique to Moore's case, which demonstrate he is not an impartial decision-maker in Moore's clemency proceedings.

Though the South Carolina Constitution grants the governor authority to grant clemency in capital cases, S.C. Const. art. IV, § 14, this does not undermine the United States Supreme Court's mandate that State clemency procedures require, at minimum, the basic elements of due process, including notice, an opportunity to be heard, and a neutral and impartial decision maker. *Ohio Adult Parole Authority v. Woodard*, 523 U.S. 272, 288–89 (1998); *Marshall v. Jericho, Inc.*, 446 U.S. 238 (1980); *Matthews v. Eldridge*, 424 U.S. 319 (1976). Clemency proceedings that are left to arbitrary influence or chance, or do not afford individuals seeking clemency minimum due process protections, require judicial intervention to ensure due process is properly afforded. *Id.*

Defendant's argument that Moore is unlikely to succeed on the merits of this action is based on two fundamental mischaracterizations of Moore's due process claims. First, Defendant argues his role in the clemency process creates no constitutional problem because other courts have found a governor's prior service as a state's Attorney General alone does not create a conflict that warrants recusal from the clemency decision making process. ECF No. 18 at 8–11. Second, Defendant contends his prior statements do not reflect a general policy against granting clemency, but even if they did, a general policy of being averse to clemency is insufficient to raise concerns about due process in any clemency proceedings he oversees. *Id.* at 11–13. Neither contention engages with Moore's actual due process argument.

As set forth in the complaint, Defendant has a unique history in Moore's case. ECF No. 1 at ¶¶ 14–29. Prior to his service as Governor, Defendant served as the Attorney General. In that role, he oversaw the defense of Moore's death sentence for nearly a decade—during both Moore's direct appeal proceedings and state post-conviction proceedings. *Id.* at ¶¶21–23. Then, in his role as Governor, Defendant made specific comments about the propriety of clemency in Moore's case.

*Id.* at ¶¶ 24–29. Service as Attorney General *plus* prematurely stating he would deny Moore's clemency application (before it was reviewed or even filed) is what rises to the level of a due process violation in this case.

Defendant seeks to minimize the statements made in April 2022 by ignoring the context in which the statements were made. Just nine days before Moore's then-scheduled execution, and before Moore submitted a clemency application to the Governor, Defendant spoke to reporters and one asked specifically about Moore's case.[1] John Monk, *SC Gov. McMaster says he won't commute Richard Moore's death sentence*, THE STATE (Apr. 21, 2022), available at https://www.thestate.com/news/politics-government/article260604877.html [hereinafter "Monk Article"].[2] Reporter John Monk from *The State* newspaper asked Defendant about Moore's case to which he responded that "the whole thing that led to the case is of course a tragedy." Henry McMaster, *Governor McMaster Media Avail 4/20/22*, at 0:01–0:49, youtube.com (April 20, 2022), https://tinyurl.com/mpvbtv49 (responding to: "We've just received word that Richard Moore whose execution date was April 29th, the State Supreme Court has put that execution on hold but they have yet to issue a full explanation about why they've done it and that's forthcoming but do you have any observations or comments on his case?"). The reporter went on to ask if that meant he had "made up [his] mind of whether to commute his sentence or not" and Defendant responded,

---

[1] Execution Notice, *State v. Richard Bernard Moore*, Case No. 2001-021895 (S.C. Apr. 7, 2022). Earlier that day, the Supreme Court of South Carolina stayed Moore's execution to allow for resolution of litigation regarding the constitutionality of the state's execution methods. Order Staying Execution, *State v. Richard Bernard Moore*, Case No. 2001-021895 (S.C. Apr. 20, 2022).

[2] Defendant cites the following video as the interaction with the press Moore details in the complaint: Henry McMaster, *Governor McMaster Media Avail 4/20/22*, at 0:01–0:49, youtube.com (April 20, 2022), https://tinyurl.com/mpvbtv49. This video is not publicly available without the link provided by Defendant in his response. It is unclear who created this video and for what purpose, and only statements made by the Governor (not the reporters) can be fully heard on this recording.

"I have no intention to commute a sentence." *Id.* at 0:40–0:49; Monk Article. Defendant continued to comment about Moore's case specifically, stating, "The jury made their decision in this particular case . . . I've seen the record, and there have been many hearings up and down, motions, and this penalty is a very strong response to criminal activity—but it is a necessary response." *Id.* at 0:49–1:16; Monk Article. Given the context and setting in which the remarks were made, Defendant's statements are not merely his general view on clemency at that time. Rather, they were directly commenting on Moore's case specifically and indicating that he has no intention of granting Moore clemency. The reporter who posed the questions clearly understood Defendant's statements as directly relating to Moore's case, reporting "South Carolina Gov. Henry McMaster said Wednesday that convicted killer Richard Moore should not expect any mercy from him in the form of a reprieve." Monk Article. These statements, in conjunction with Defendant's documented bias against clemency and his prior participation in Moore's case, are the combined unique context that indicates Moore will be denied the due process protections afforded to individuals seeking clemency if Defendant is allowed to be his clemency decision maker.[3] *See Woodard*, 523 U.S. at 288–89.

None of the cases cited by Defendant address the combination of circumstances present in Moore's case. Nor does Defendant offer anything in response to discredit his prior statements or suggest otherwise that he will be an impartial decision maker for clemency in Moore's case. Rather, Defendant claims that these statements simply reflect "his thought at that time" and that this Court, and Moore, should be reassured that he will be impartial because he said he "carefully

---

[3] At the very least, the parties' disagreement on these statements and what they convey creates a factual dispute warranting further development and consideration by the Court. Denying a preliminary injunction under the unique circumstances present in this case would deprive Moore of the opportunity to develop this issue and seek a resolution given the truncated period between when an execution date is set and carried out under state law. S.C. Code § 17-25-350.

considered and thoughtfully reviewed" the clemency application of Mr. Owens, who was executed in South Carolina on September 20, 2024. ECF No. 18, at 12.  Regardless of whether he did or did not give Owens's case the attention it deserved, there were no premature public statements from the Defendant about the propriety of clemency in Owens's case before Owens even applied for clemency. Thus, any such "reassurance" is cold-comfort given Governor McMaster's public statements that Moore should expect no mercy before receiving or reviewing the clemency application.

> II. **There must be a remedy for procedural due process violations in clemency proceedings.**

Defendant contends that the idiosyncratic wording of the South Carolina Constitution deprives this Court of authority to grant the relief Plaintiff seeks, maintaining that Moore seeks to "redline" the state constitution. ECF No. 18 at 16.  If this Court were to accept Defendant's argument, then the reality is that there is no, and can be no, remedy for *any* due process violation at the clemency stage, no matter how egregious it might be.

Regardless of who makes the clemency decision, the fact remains that *Woodard* established that inmates have a right to procedural due process throughout clemency proceedings, 523 U.S. 272, 288 (1988), and *ubi jus, ibi remedium*: where there is a right, there must be a remedy. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 163–66 (1803) ("[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.") (citing 3 William Blackstone, COMMENTARIES ON THE LAWS OF ENGLAND 23 (Dawsons of Pall Mall 1966) (1768)). Under Defendant's argument—that the South Carolina Constitution forecloses any remedy for due process violations by the Chief Executive in the clemency process—no court would have authority to take any action even if Governor McMaster in fact decided to flip a coin to make the clemency decision, the exact example of a due process

violation Justice O'Connor warned against in *Woodard*. Further, Defendant's arguments would extend to far more egregious due process violations than a coin flip: According to Defendant, if a governor announced a "general policy" that he would only consider granting clemency to white inmates, or Christian inmates, or inmates who provided a five-thousand-dollar check with their clemency application, federal courts would still be powerless to remedy these due process violations. If the Court is not convinced that Plaintiff's proposed solution is the right one, it is of course free to define its own remedy that adequately safeguards Plaintiff's constitutional rights, but it cannot allow a violation of due process to go uncorrected.

Defendant also fails to recognize courts' longstanding history of remedying similar due process violations in cases involving judge impartiality. Multiple courts, including the United States Supreme Court, have repeatedly held that biased judges are not permitted to preside over a case and required recusal and/or rehearing before an impartial decision-maker. *See, e.g.*, *Williams v. Pennsylvania*, 579 U.S. 1 (2016) (holding that a judge who, as the former district attorney, authorized seeking the death penalty against defendant could not preside over defendant's post-conviction claim in the Pennsylvania Supreme Court due to an impermissible risk of bias, and vacating the judgment and ordering rehearing before an unbiased bench); *Tumey v. Ohio*, 273 U.S. 510 (1927) (holding that a judge was disqualified where he had a direct pecuniary interest in the outcome of defendant's case); *Clemmons v. Wolfe*, 377 F.3d 322, 329 (3d. Cir. 2004) ("[W]e now exercise our supervisory power to require that each federal district court judge in this circuit recuse himself or herself from participating in a 28 U.S.C. § 2254 habeas corpus petition of a defendant raising any issue concerning the trial or conviction over which that judge presided in his or her former capacity as a state court judge."); *Floyd v. State*, 303 S.C. 298, 298, 400 S.E.2d 145, 146 (S.C. 1991) ("[A]s a matter of policy" in all post-conviction relief hearings in South Carolina, "a

judge shall, upon motion, recuse himself if he was the judge who presided at the guilty plea, criminal trial, or probation revocation proceeding for which relief is being sought."). Simply put, ample precedent demonstrates that courts have the power to correct or prevent rights violations by biased decision-makers.

Finally, even if the requirements of due process—notice and a fair opportunity to be heard by a neutral decision-maker—were at odds with S.C. Const. art. IV, § 14, the Supreme Court's decision in *Woodard* that inmates are entitled to basic due process in clemency proceedings under the Fourteenth Amendment to the United States Constitution would trump any contrary provision in the state constitution. *See, e.g.*, U.S. Const. art. VI § 2; *McCulloch v. Maryland*, 17 U.S. 316, 406 (1819) ("The government of the United States, then, though limited in its powers, is supreme; and its laws, when made in pursuance of the constitution, form the supreme law of the land, any thing in the constitution or laws of any State to the contrary notwithstanding.") (internal quotation marks omitted). Courts have long recognized the principle that the federal constitution establishes the "floor" for constitutional rights, and while states may confer rights beyond those guaranteed by the federal constitution, they may not sink below the federal floor. *See, e.g.*, *Ark Encounter, LLC v. Parkinson*, 152 F. Supp. 3d 880, 927 (E.D. Ky. 2016) ("The federal Constitution may only be a floor and not a ceiling, but it is a floor nonetheless."); *State v. Forrester*, 541 S.E.2d 837, 840 (S.C. 2001) ("the federal Constitution sets the floor for individual rights while the state constitution establishes the ceiling"). Thus, since the Supreme Court has found that the Fourteenth Amendment requires due process in clemency proceedings, the South Carolina Constitution may not be interpreted or applied in a manner that would preclude compliance with that requirement.

### III. Moore has shown he will suffer irreparable harm without preliminary relief and the equities and public interest favor him.

Defendant asserts that, despite Moore's pending execution date, "irreparable harm is not a foregone conclusion." ECF No. 18 at 19. This assertion is contrary to the Fourth Circuit's recognition that, "[i]n cases involving the death penalty when an execution date has been set, as here, it is a certainty that irreparable harm will result" if an execution is not stayed. *Beaver v. Netherland*, 101 F.3d 977, 979 (4th Cir. 1996). But Moore has additionally demonstrated that if his execution proceeds prior to a merits consideration of Defendant's constitutional fitness to be the ultimate decision-maker in Moore's clemency proceedings, Moore's constitutional right to due process is likely to be violated with no possible remedy after the fact. *See Woodard*, 523 U.S. at 288. Thus, this factor supports staying Moore's execution.

As to the balance of equities, Moore's due process right to have his clemency application considered by a neutral-decision maker trumps the State and the victims' interests in the timely enforcement of his sentence, especially given that any delay would be minimal. Moore is not seeking any particular period of time in which his request for clemency be considered. He is merely requesting that someone other than Governor McMaster, who made clear he would deny clemency even before Moore requested it, make the decision whether mercy should be extended or extinguished. The interest in proceeding with the execution as scheduled, "must be measured against [Moore's] and the public's interest in ensuring that such punishment comports with the Constitution." *Barr v. Purkey*, 140 S. Ct. 2594, 2599 (2020) (Breyer, J., dissenting). In this case, executing Moore following the clemency decision of a partial and biased decision maker would not comport with the due process clause of the constitution.

The cases cited by Defendant have no bearing on the issue before this Court. In *Bucklew v. Precythe*, the Supreme Court of the United States found a delay unwarranted when the "lawsuit[s]

after lawsuit[s]" filed were "pursued in a 'dilatory' fashion or based on 'speculative' theories." 587 U.S. 199, 151 (2019) (citing *Hill v. McDonough*, 547 U.S. 573, 584–85 (2006)). The Court found that a stay was not warranted where "Mr. Bucklew and other inmates unsuccessfully challenged Missouri's protocol in state court" and where "his suit in the end amounts to little more than an attack on settled precedent, lacking enough evidence even to survive summary judgment." *Id.* at 149.

Moore's prior challenges to his conviction, death sentence, and method of execution all raised distinct constitutional claims that are not replicated in this action. Nor were they frivolous. For example, in *Owens v. Stirling*, No. 2022-001280 (S.C.), the Supreme Court of South Carolina determined that a trial on the merits of Moore's state constitutional challenge to electrocution and the firing squad as methods of execution was necessary, and the trial court ultimately ruled in Moore's favor. While the state supreme court ultimately reversed that judgment, it did so over the considered dissents of Chief Justice Kittredge and Justice Beatty. *Owens v. Stirling*, 904 S.E.2d 580, 635 (2024) (Kittredge, J., concurring in part and dissenting in part) (Beatty, J., concurring in part and dissenting in part).

Moore is not *attacking* settled precedent, nor does he seek an open-ended stay. Instead, Moore seeks interim relief and a tailored injunction to compel the State to comply with the precedent set forth in *Woodard* and allow the State's Parole Board, as a neutral decision maker, to consider his clemency application.

## CONCLUSION

For the reasons stated above and in Plaintiff's complaint and motion for preliminary injunction, Plaintiff alleges sufficient facts stating the basis for preliminary relief and demonstrating that it is necessary to preserve his rights during the litigation of his underlying

action. He is likely to succeed on the merits of his claim. This Court should enter a preliminary injunction so that Plaintiff can fully and fairly litigate his claim before he is executed.

                Respectfully submitted,

                <u>s/ Lindsey S. Vann</u>

                LINDSEY S. VANN (Fed. ID # 11872)
                ALLISON FRANZ (Fed. ID # 13953)
                JUSTICE 360
                900 ELMWOOD AVE, SUITE 200
                COLUMBIA, SC 29201
                (803) 765-1044

                JOHN H. BLUME (Fed. ID #1360)
                CORNELL UNIVERSITY
                112 MYRON TAYLOR HALL
                ITHACA, NY 14853
                (607) 255-1030

                *Counsel for Plaintiff*

October 12, 2024.