IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **RICHARD BERNARD MOORE,** *Plaintiff,* v. **HENRY D. McMASTER,** in his personal capacity and in his official capacity as the Governor of South Carolina, *Defendant.* | **Case No.: 3:24-cv-05580-MGL-TER** **DEATH PENALTY CASE** Execution date: November 1, 2024 |

**JOINT REPLY ADDRESSING RIPENESS**

Per this Court's Order, ECF No. 22, the parties have conferred and submit this Joint Reply Addressing Ripeness. Both parties agree the suit is ripe for judicial consideration. The parties lay out their respective theories of ripeness below.

I.   *Plaintiff's Arguments Regarding Ripeness.*

Under Article III of the United States Constitution, a claim is ripe for review when it presents an actual controversy meriting judicial intervention.  Courts evaluate two factors to determine whether a dispute is ripe: (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149 (1967); *see also, e.g.*, *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010); *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998); *Texas v. United States*, 523 U.S. 296, 300–01 (1998); *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201 (1983).  A case is ripe when further development of facts will not pose any additional

1

legal component to the case in question or if the case concerns a purely legal issue. *See, e.g.*, *Ohio Forestry Ass'n*, 523 U.S. at 733 (1998).

Moore's claim is currently fit for judicial decision because his execution date has been set and he has announced his intention to seek clemency. Complaint, *Moore v. McMaster*, No. 3:24-cv-5580-MGL-TER, at ¶ 62 (Oct. 7, 2024). Moreover, Moore has raised an actual controversy concerning Defendant's fitness to decide any clemency petition he files. Further factual development—i.e., the filing of a clemency application—would not change anything about Moore's legal claims.

Moreover, withholding court consideration of these issues or requiring Moore to file a clemency application would cause hardship to both parties and to the Court. The governor has already stated that he will wait until the final minutes before an execution is scheduled to proceed to announce his decision on clemency. Henry McMaster, Gov. Media Avails on Execution, at 6:01, youtube.com (Oct. 8, 2024), https://tinyurl.com/3k3w8efj (statement from Sept. 12, 2024) ("[W]hen the time comes to announce that [clemency] decision, which will be on that date, then I'll do it"); Joseph Bustos, "McMaster Has the Power to Commute Death Row Inmate Sentence. Will the SC Governor Use It?," The State (Sept. 20, 2024), https://www.thestate.com/news/politics-government/article292200095.html ("[U]ntil we get to the last moments, . . . no statement should be made as to what will happen at that moment."); Jeffrey Collins, "South Carolina Death Row Inmate Asks Governor for Clemency," Associated Press (Sept. 18, 2024), https://apnews.com/article/south-carolina-execution-freddie-owens-lethal-injection-7c61fc95a45a2ae4f22709bdfabf12f6. Indeed, before the execution of Khalil Allah (also known as Freddie Owens) on September 20, the governor did exactly that, announcing his decision on Allah's clemency application minutes before the execution was scheduled. Thus, if Moore were

required to wait until McMaster announced his clemency decision in the moments before execution, he would have at most a handful of minutes to file suit before his execution proceeded and the claim became moot.

In sum, the claims are ripe for adjudication by this Court at this time.

II.     *Defendant's Arguments Regarding Ripeness.*

This case is ripe for at least three reasons. First, the Governor may grant clemency at any time, either on his own initiative or in response to a clemency petition. Second, requiring a condemned inmate to file a clemency petition before a claim is ripe would only promote gamesmanship and risk delaying executions. And third, not exercising jurisdiction until a clemency petition is filed would threaten to invade the executive's historically exclusive authority.

"Ripeness reflects constitutional considerations that implicate Article III limitations on judicial power, as well as prudential reasons for refusing to exercise jurisdiction."[*] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 670 n.2 (2010) (cleaned up). The doctrine focuses on the "timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991). Ripeness prevents courts from opining on abstract or hypothetical disputes. *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807 (2003). Whether a case is ripe looks at "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 149 (1967).

Of course, that this case is ripe does not mean that it has merit. Ripeness "is separate from" the merits. *Better Gov't Ass'n v. Dep't of State*, 780 F.2d 86, 93 n.36 (D.C. Cir. 1986). And on the

---

[*] Although the Supreme Court has questioned "the continuing vitality of the prudential ripeness doctrine," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014), both that Court and the Fourth Circuit "have continued to apply" it, *Wild Va. v. Council on Env't Quality*, 56 F.4th 281, 295 n.5 (4th Cir. 2022).

merits, Moore loses, as the Governor has already explained. *See* ECF No. 18.

**1.**     This case is ripe because a governor may exercise the clemency power at any time, whether on his own accord or in response to a condemned inmate's application for executive clemency. Examples abound in both directions. On one hand, some governors have issued sweeping clemency declarations, commuting death sentences of many (or even all) inmates. For example, in 1970, Arkansas Governor Winthrop Rockefeller, an outspoken death penalty opponent, commuted the sentences of everyone on Arkansas's death row, citing his "authority" under state law and his "beliefs." *Arkansas Spares All on Death Row*, N.Y. Times, at 26 (Dec. 30, 1970). In 1986, New Mexico's outgoing Governor Toney Anaya did the same thing based on his "personal beliefs." Robert Reinhold, *Outgoing Governor in New Mexico Bars the Execution of 5*, N.Y. Times, at A1 (Nov. 27, 1986). Oregon Governor Kate Brown likewise commuted the death sentences of condemned inmates in her State during her waning days in office. *See* Rachel Treisman, *Oregon Gov. Kate Brown Explains Why She Commuted All of Her State's Death Sentences*, NPR (Dec. 15, 2022), https://tinyurl.com/3hnpz9vz. Courts have upheld these blanket clemencies. When Governor George Ryan commuted more than 160 death sentences in Illinois in 2003, that State's supreme court rejected the state attorney general's challenge to that decision, even though some inmates had never filed a clemency petition or even been sentenced. *See Illinois ex rel. Madigan v. Snyder*, 804 N.E.2d 546 (Ill. 2004).

On the other hand, some governors have adopted blanket policies against clemency. As one example, a Kentucky inmate alleged the State's governor had a "policy of not considering any clemency action for a death row inmate." *In re Sapp*, 118 F.3d 460, 461 (6th Cir. 1997), *abrogated on other grounds by Cooey v. Strickland*, 479 F.3d 412, 422 (6th Cir. 2007). The Sixth Circuit recognized that "[t]he very nature of clemency is that it is grounded solely in the will of the

4

dispenser," so the governor could have any procedure or policy he chose (within any limitations imposed by state law). *Id.* at 465. An inmate therefore "cannot complain that the governor has chosen to resolve his mind on these matters by considering cases by categories, nor that he has chosen to make an announcement of such reasoning." *Id.* And in any event, a governor is not even "bound by such a statement" because "[h]e may change his mind tomorrow, or he may grant clemency in the face of his own announced policy, without hindrance." *Id.* Courts continue to adhere to this logic. *See, e.g.*, *Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002); *Bryan v. DeSantis*, 343 So. 3d 127, 128 (Fla. Dist. Ct. App. 2022).

These illustrations confirm that a governor may choose to announce clemency decisions whenever the governor chooses (assuming state law does not establish some other procedure). An inmate therefore can assert a clemency-related claim once the claim arises. So hypothetically, an inmate could try to assert a clemency-related claim even before his direct appeals were exhausted. Of course, prudential considerations would likely counsel against a court deciding the claim then because the appellate court might reverse or vacate the death sentence. *Cf. Tammy W. v. Hardy*, 681 F. Supp. 2d 732, 736 (S.D.W. Va. 2010) (claim was unripe because an agency hearing could resolve in the plaintiff's favor). But those considerations cut the other way after an inmate exhausts his appeals and collateral challenges and disappear once an execution date is set.

One important caveat to this point: An inmate must have some concrete basis for bringing his claim when he does. An inmate, for instance, could not sue a governor immediately after his sentencing simply to demand that the governor consider granting clemency then. But consider Moore as a counterexample: His claim is based on the Governor's service as attorney general and public statements about clemency. The Governor has, in fact, served as attorney general and spoken publicly on clemency, so Moore's due process claim based on those allegations is both ripe

5

and wrong—as the Governor explained in his response to the motion for preliminary injunction and temporary restraining order (ECF No. 18).

To be sure, some courts have concluded that clemency-related challenges aren't ripe until an inmate files a clemency petition. *See, e.g.*, *Hughes v. Dretke*, No. CV H-01-4073, 2004 WL 7338388, at *33 (S.D. Tex. May 3, 2004); *Middleton v. Missouri*, 80 S.W.3d 799, 817 (Mo. 2002). But these cases are distinguishable in various ways, such as the procedures that state law provides for clemency. Ultimately, all the Court must do is conclude that Moore's claim is ripe because the South Carolina Supreme Court has issued an execution notice, which is an event that other courts have already recognized as significant in the ripeness analysis. *See, e.g.*, *White v. Thaler*, 522 F. App'x 226, 236 (5th Cir. 2013). The Court need not chart a timeline and declare where along that spectrum a claim of this nature becomes ripe.

**2.** This case is ripe because requiring a clemency petition to be filed first would promote gamesmanship and threaten to delay executions. Two legal principles come into play here. One, courts avoid rules that allow for "any procedural gamesmanship." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 547 (4th Cir. 2013). Two, "[l]ast-minute stays should be the extreme exception, not the norm." *Bucklew v. Precythe*, 587 U.S. 119, 150 (2019).

Mandating that an inmate file a clemency petition before bringing a claim risks violating both these principles. A condemned inmate does not even have to file a clemency petition, and South Carolina law (unlike some other States) includes no statutory process for filing or reviewing a clemency petition. The discretionary authority "to grant reprieves and to commute a sentence of death" is vested solely in the Governor. S.C. Const. art. IV, § 14. He "may" refer a petition to the Board of Paroles and Pardons, or he "may act on any petition without reference to the board." S.C. Code Ann. § 24-21-910. Even if he does refer a petition to Board, the Governor remains free to

6

"not adopt the [Board's] recommendation." *Id.*

An inmate may thus file a clemency petition at any time. Not exercising jurisdiction over a clemency-related claim until that petition is filed would simply encourage an inmate to wait as long as possible to file the petition so that he could wait even longer to file his lawsuit. Then, with that new lawsuit, the inmate could move to stay his execution so that he could litigate the claim. Courts would likely reject such an eleventh-hour ploy, but still, the law should not encourage that attempt either. If an inmate did not have a ripeness bar to asserting a clemency-related claim, then any delay in doing so could rightfully be held against him. *See Bucklew*, 587 U.S. at 150 ("Courts should police carefully against attempts to use such challenges as tools to interpose unjustified delay.").

**3.**     This case is ripe because not exercising jurisdiction until a clemency petition is filed would threaten to invade the executive's historically exclusive authority. "[F]rom time immemorial," clemency has been exercised "by the executive." *United States v. Wilson*, 32 U.S. (7 Pet.) 150, 160 (1833). "[P]ardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). An inmate has, at most, a "*minimal* procedural safeguard[]" to ensure that clemency decisions are not "arbitrar[]y." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (opinion of O'Connor, J.) (emphasis in original).

If a court did not consider clemency-related claims until after a petition has been filed, it would increase the likelihood of a court micromanaging the clemency process. But such judicial involvement in clemency is contrary to centuries of practice and precedent. *See Herrera v. Collins*, 506 U.S. 390, 412–15 (1993) (discussing the history of clemency in Anglo-American law). A governor may handle a clemency petition however he sees fit. He "may agonize over every

petition; he may glance at one or all such petitions and toss them away; he may direct his staff as to the means for considering them." *In re Sapp*, 118 F.3d at 465. The courts have nothing to say about that process, as long as it isn't arbitrary. *See Woodard*, 523 U.S. at 289. Waiting would also risk having courts consider the merits of an already-filed clemency petition, thereby usurping the executive's exclusive constitutional duty. *See* ECF No. 18, at 14 (collecting cases). The courts should therefore not adopt a rule that puts them in a position to intrude into the executive's authority.

                                                                               Respectfully submitted,

| | |
|---|---|
| s/ Lindsey S. Vann<br>LINDSEY S. VANN (Fed. ID # 11872)<br>ALLISON FRANZ (Fed. ID # 13953)<br>Justice 360<br>900 Elmwood Ave, Suite 200<br>Columbia, SC 29201<br>(803) 765-1044<br><br>JOHN H. BLUME (Fed. ID #1360)<br>Cornell University<br>112 Myron Taylor Hall<br>Ithaca, NY 14853<br>(607) 255-1030<br><br>*Counsel for Plaintiff* | s/Wm. Grayson Lambert<br>Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)<br>*Chief Legal Counsel*<br>Wm. Grayson Lambert (Fed. Bar No. 11761)<br>*Senior Litigation Counsel &*<br>*Chief Deputy Legal Counsel*<br>Erica W. Shedd (Fed. Bar No. 13206)<br>*Deputy Legal Counsel*<br>Tyra S. McBride (Fed. Bar No. 13324)<br>*Deputy Legal Counsel*<br>OFFICE OF THE GOVERNOR<br>South Carolina State House<br>1100 Gervais Street<br>Columbia, South Carolina 29201<br>(803) 734-2100<br>tlimehouse@governor.sc.gov<br>glambert@governor.sc.gov<br>eshedd@governor.sc.gov<br>tmcbride@governor.sc.gov<br><br>*Counsel for Governor McMaster* |

October 14, 2024.