IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| RICHARD BERNARD MOORE,<br><br>         *Plaintiff*,<br>v.<br><br>HENRY D. MCMASTER, in his personal capacity and in his official capacity as Governor of South Carolina,<br><br>         *Defendant*. | Civil Action No.: 3:24-cv-05580-MGL<br><br>**NOTICE OF FILING OF DECLARATION OF GOVERNOR HENRY D. MCMASTER** |

Governor Henry D. McMaster gives notice of the filing of the accompanying Declaration in response to the Court's invitation or request during the October 15, 2024 hearing in this case. *See* Tr. 16:15–17:22, ECF No. 26. In voluntarily submitting this Declaration, the Governor makes three important points:

*First*, notwithstanding the Court's seemingly well-intentioned request, there is no judicial authority that would require him to submit a declaration regarding his clemency authority. The South Carolina Constitution vests the Governor with the exclusive authority and solemn discretion to grant clemency in capital cases. *See* S.C. Const. art. IV, § 14. Clemency "is an act of grace." *Crooks v. Sanders*, 123 S.C. 28, 33, 115 S.E. 760, 762 (1922). As the Court rightly recognized during the hearing, *e.g.*, Tr. 8:11–12, clemency matters are "fundamentally different than adjudicatory proceedings within the Judicial Branch," *Bacon v. Lee*, 549 S.E.2d 840, 853 (N.C. 2001). Given clemency's unique role in our constitutional system, "pardon and commutation decisions have not traditionally been the business of courts; as such, they are rarely, if ever, appropriate subjects for judicial review." *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981). To that end, courts have repeatedly refused to consider challenges to how a governor

decides to exercise (or not to exercise) clemency authority. *See, e.g.*, *In re Sapp*, 118 F.3d 460, 465 (6th Cir. 1997); *Bacon*, 549 S.E.2d at 854.

Thus, "[i]t is not for the Judicial Branch to determine the standards for this discretion. If the clemency power is exercised in either too generous or too stingy a way, that calls for political correctives, not judicial intervention." *Cavazos v. Smith*, 565 U.S. 1, 9 (2011) (per curiam). Accordingly, the Governor cannot be required—and respectfully, should not be asked or encouraged—to provide assurances to, or obtain preclearance from, a federal court before deciding whether to exercise an exclusive executive power. *See Evans v. Muncy*, 916 F.2d 163, 167 (4th Cir. 1990) (per curiam) ("Affixing a constitutional label to a petition for clemency will not suffice to draw the federal courts into reviewing pleas of lenity from state prisoners . . . . Such claims from state inmates would be legion, and the federal courts would lack guidance in law for distinguishing among them. . . . We may not freely substitute our own judgment for that of sentencing juries or state executives . . . ."); *Weldon v. Gordon*, 517 P.3d 550, 556 (Wyo. 2022) ("This Court cannot and must not make any order or ruling which requires the Governor to follow any certain procedure in handling commutation petitions presented for his review."); *cf. Rosemond v. Hudgins*, 92 F.4th 518, 526 (4th Cir. 2024) (emphasizing that "absent a constitutional constraint, the President's ability to commute a sentence is not subject to any further formal limits or requirements" and that "the Judiciary's role in the matter of executive commutations is very sharply circumscribed").

*Second*, against this legal backdrop, even requesting a sworn affirmation from the Governor here, much less purporting to require one in future clemency contexts, risks intruding upon the State's sovereign interests and the Governor's exclusive authority. For starters, expecting the Governor to attest to his current or future compliance with his constitutional duties is fundamentally at odds with the presumption of good faith courts must afford to government

officials discharging their official responsibilities. *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 442 (2004) ("As public servants, the officials of the State must be presumed to have a high degree of competence in deciding how best to discharge their governmental responsibilities."); *Sunday Lake Iron Co. v. Wakefield Twp.*, 247 U.S. 350, 353 (1918) ("The good faith of such officers and the validity of their actions are presumed").

After all, as the Governor notes in his Declaration, he has sworn a constitutionally required Oath of Office as Governor (and renewed that vow to the people of South Carolina twice now), and it remains his "firm intention and commitment to fulfill" the obligations embodied in that oath "in all official matters and circumstances before [him], including those involving capital punishment and clemency." Gov. McMaster Decl. ¶ 4. As the Court acknowledged during the recent hearing, clemency decisions in capital cases are an "executive right" and a "responsibility" that's "part of the [Governor's] job." Tr. 10:18–21. The Governor has already sworn an oath to perform the duties of that job to the best of his abilities, and that oath is both legally significant and entitled to great respect. *Shakman v. Pritzker*, 43 F.4th 723, 731 (7th Cir. 2022) ("The Governor, keep in mind, also swears an oath to uphold both the [state] Constitution *and* the federal Constitution. As a matter of first principles, the Constitution presumes that state officials 'have a high degree of competence in deciding how best to discharge their governmental responsibilities,' including how to effectuate constitutional compliance." (quoting *Frew ex rel. Frew*, 540 U.S. at 442)).

Moore's challenge does not provide any basis for casting aside the customary presumption of good faith, but even if that presumption were somehow pierced, the Court should adhere to what the Fourth Circuit has referred to in an analogous context as an "affirmative obligation" to accord the Governor's Declaration "the respect [it is] due as the official representations of [an official]

whose duty it is to faithfully enforce not only the laws of the [State] but also the Constitution of the United States." *Richmond Med. Ctr. for Women v. Gilmore*, 144 F.3d 326, 331 (4th Cir. 1998) ("[B]y suggesting that the [State's] officials will yield to politics over law, the district court imputes a type of bad faith, if not lawlessness, to the State's officials without either authority or justification . . . .").

*Third*, not only does requesting or requiring prior affirmation from the Governor approach impermissible burden-shifting, but it is also particularly unnecessary here given Plaintiff's implausible claims. Although the Supreme Court has suggested that "some *minimal* procedural safeguards apply to clemency proceedings," those safeguards protect only against random decisions such as "flip[ing] a coin" or "arbitrar[]y" denials of "access to [a State's] clemency process." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 274 (1998) (opinion of O'Connor, J.). Nothing in the Complaint falls within the scope of what Justice O'Conner said "might" warrant judicial intervention. *Id.* As this Court recognized at the hearing, the Governor is "not a judge" when deciding whether to grant clemency, and clemency "is not even a judicial proceeding." Tr. 8:11–12; *see also, e.g., Bacon*, 549 S.E.2d at 851 ("The nature of executive clemency is fundamentally different than adjudicatory proceedings within the Judicial Branch of government."). Courts have rightly refused to extend *Woodard* to include "the concept of a 'fair and impartial tribunal' to clemency proceedings." *Schad v. Brewer*, No. CV-13-01962-PHX-ROS, 2013 WL 5524547, at *8 (D. Ariz. Oct. 4, 2013), *aff'd*, 732 F.3d 946, 947 (9th Cir. 2013) ("The Supreme Court has never recognized a case in which clemency proceedings conducted pursuant to a state's executive powers have implicated due process."). Clemency can encompass "a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations." *Woodard*, 523 U.S. at 281 (opinion of Rehnquist, C.J.). Precisely "[b]ecause clemency is extended

mainly as a matter of grace, and the power to grant it is vested in the executive prerogative, it is a rare case that presents a successful due process challenge to clemency procedures themselves." *Noel v. Norris*, 336 F.3d 648, 649 (8th Cir. 2003); *see also Roll v. Carnahan*, 225 F.3d 1016, 1017–18 (8th Cir. 2000) ("[A]lthough some minimal due process protections apply to a state clemency proceeding, the decision to grant or deny clemency is left to the discretion of the governor. Thus, [condemned inmate's] complaint that the governor will not be objective fails." (internal citations omitted)).

For the foregoing reasons, Governor McMaster voluntarily submits the accompanying Declaration out of respect for the Court and to accommodate the Court's request. By voluntarily providing this Declaration, however, Governor McMaster does not intend to submit any such affirmations in the future or open the door for courts to invite, request, or require the same or similar statements in the context of future clemency matters.

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted,

s/Thomas A. Limehouse, Jr.
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Senior Litigation Counsel &*
*Chief Deputy Legal Counsel*
Erica W. Shedd (Fed. Bar No. 13206)
*Deputy Legal Counsel*
Tyra S. McBride (Fed. Bar No. 13324)
*Deputy Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov
eshedd@governor.sc.gov
tmcbride@governor.sc.gov

*Counsel for Governor McMaster*

October 17, 2024
Columbia, South Carolina