

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | | |
|---|---|---|
| RICHARD BERNARD MOORE, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 3:24-5580-MGL |
| | § | |
| HENRY D. MCMASTER, *in his personal* | § | |
| *capacity and in his official capacity as the* | § | |
| *Governor of South Carolina*, | § | |
| Defendant. | § | |

---

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

---

## I.    INTRODUCTION

Plaintiff Richard Bernard Moore (Moore) filed a complaint under 42 U.S.C. § 1983, alleging violations of his due process rights under the Fourteenth Amendment.  He seeks declaratory and injunctive relief against Defendant Henry D. McMaster (Governor McMaster), in his personal capacity and in his official capacity as the Governor of South Carolina.  The Court has jurisdiction over this matter as per 28 U.S.C. § 1331.

Pending before the Court is Moore's motion for a temporary restraining order and preliminary injunction.  Having carefully considered the motion, the response, the reply, the supplements, the record, and the relevant law, it is the judgment of the Court Moore's motion will be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

Moore was convicted and sentenced to death for various crimes stemming from his robbery of a convenience store in Spartanburg County, South Carolina, which ultimately resulted in him fatally shooting the store clerk.  State and federal courts have rejected Moore's direct and collateral challenges to his sentence.  He is scheduled to be executed on November 1, 2024.

When Moore filed this action, he contemporaneously moved for a temporary restraining order and preliminary injunction, requesting the Court grant preliminary relief, stay his execution, declare it would be unconstitutional for Governor McMaster to consider his forthcoming clemency petition, enjoin Governor McMaster from conducting his clemency proceedings, declare Governor McMaster must refer his clemency petition to the South Carolina Board of Paroles and Pardons (Parole Board) for consideration on the merits, and declare any decision of the Parole Board is binding on Governor McMaster.

Governor McMaster opposed the motion, and Moore replied.  The Court held a hearing, after which Governor McMaster filed a declaration, which the Court will detail below.  Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.


## III.    STANDARD OF REVIEW

The substantive standards for granting a request for a temporary restraining order and entering a preliminary injunction are the same.  *Virginia v. Kelly*, 29 F.3d 145, 147 (4th Cir. 1994). Thus, although Moore requests both forms of relief, for the sake of clarity, the Court will analyze the motion only in terms of a preliminary injunction.

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  It should issue only when the plaintiff can

"establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20.

The burden is on the party seeking injunctive relief to show he is entitled to such relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S. 423, 443 (1974). "[A]ll four requirements must be satisfied." *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated and remanded on other grounds*, 559 U.S. 1089 (2010).

"Given [the] limited purpose [of preliminary injunctions] and given the haste that is often necessary . . . , [they are] customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). Accordingly, the Court "may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted." *G.G. ex rel. Grimm v. Gloucester Cnty. Sch. Bd.*, 822 F.3d 709, 725–26 (4th Cir. 2016), *vacated and remanded on other grounds*, 580 U.S. 1168 (2017).

## IV.    DISCUSSION AND ANALYSIS

### A.    *Whether Moore's due process claims are ripe for adjudication*

A claim is considered ripe when it is fit for a judicial decision and withholding judicial attention would create hardship for the parties. *Deal v. Mercer Cnty. Bd. of Educ.*, 911 F.3d 183, 191 (4th Cir. 2018). The fitness prong of the ripeness test requires "the issues [in the case to be] purely legal and . . . the action in controversy [to be] final and not dependent on future uncertainties." *Miller v. Brown*, 462 F.3d 312, 319 (4th Cir. 2006).

Whether Moore's due process rights would be violated by Governor McMaster deciding his clemency petition is a purely legal issue. Further, missing here are any uncertainties preventing the Court from adjudicating this matter. In fact, it is certain Governor McMaster may grant clemency at any time, even on his own accord; the South Carolina Supreme Court has issued Moore's execution notice; and Moore has announced his intent to file a clemency petition. Moore has thus satisfied the fitness prong.

Concerning the hardship prong, Moore would suffer an immediate threat and burden but for this suit, as he would be forced to choose between filing a clemency petition notwithstanding Governor McMaster's purported bias or facing imminent execution without advancing his arguments in favor of clemency. *See Charter Fed. Sav. Bank v. Off. of Thrift Supervision*, 976 F.2d 203, 208–09 (4th Cir. 1992) ("The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiff] who would be compelled to act under threat of enforcement of the challenged law.").

For these reasons, the Court holds Moore's claims are ripe for adjudication.

**B.    *Whether Moore has established he is likely to succeed on the merits of his claims***

Moore insists he is likely to succeed on the merits of his claims because he "is entitled to, at minimum, basic due process requirements in his clemency proceedings, which include[] having his clemency application considered and evaluated by an impartial, open-minded, and unbiased decision-maker." Moore's Motion at 1. It is true "some *minimal* procedural safeguards apply to clemency proceedings." *Ohio Adult Parole Auth. v. Woodard*, 523 U.S. 272, 289 (1998) (O'Connor, J., concurring in part and concurring in judgment).

Moore contends Governor McMaster is neither impartial, open-minded, nor unbiased, as evidenced by his personal involvement with the case in his capacity as attorney general and by his

public statement on April 20, 2022, "that he will deny Moore clemency, despite the fact that Moore has never applied for clemency."  Moore's Motion at 2–3.

Governor McMaster, of course, argues Moore is unlikely to succeed on the merits of his claims.  Governor McMaster construes *Woodard* as "requir[ing] that clemency decisions cannot be 'arbitrar[]y.'"  Governor McMaster's Response at 2 (quoting *Woodard*, 523 U.S. at 289).  As to his personal involvement in Moore's case, he asserts the Fourth Circuit has "rejected the theory that a governor who previously served as attorney general during a condemned inmate's legal proceedings is constitutionally barred from deciding a clemency request."  *Id.*

Then, regarding Governor McMaster's public statement on April 20, 2022, he notes "[c]ourts have uniformly rejected allegations that due process is violated by a governor who adopts a general policy of not granting clemency in capital cases."  *Id.* at 11 (quoting *Anderson v. Davis*, 279 F.3d 674, 676 (9th Cir. 2002)).  Governor McMaster maintains Moore is overreading the statement, which he avers reflected "his thought at that time, in that context" and "did not mean that he would not consider what might be submitted to him in the future and remain open to granting executive clemency."  *Id.* at 12.

As an initial matter, Moore misconstrues *Woodard* as holding the minimal procedural safeguards guaranteed by the Due Process Clause include notice and an opportunity to be heard before an impartial decision-maker.  This standard is unsupported by *Woodard*, which merely requires the Court to determine whether a state's clemency procedures are arbitrary or based upon whim.  523 U.S. at 289 ("[S]ome *minimal* procedural safeguards apply to clemency proceedings. Judicial intervention might, for example, be warranted in the face of a scheme whereby a state official flipped a coin to determine whether to grant clemency, or in a case where the State arbitrarily denied a prisoner any access to its clemency process.").

5

Thus, the merits of Moore's claims depend on whether Governor McMaster's personal involvement and public statement, either individually or in combination, render South Carolina's clemency procedure as applied to Moore wholly arbitrary or based upon whim.

The Court will first address Governor McMaster's personal involvement in Moore's state judicial proceedings in his capacity as attorney general.

The Fourth Circuit previously concluded the Rule of Necessity invalidated a plaintiff's argument the governor was disqualified from considering his clemency application due to the governor's prior service as attorney general over the plaintiff's criminal proceedings. *Buchanan v. Gilmore*, 139 F.3d 982, 984 (4th Cir. 1998) (relying on *Pickens v. Tucker*, 851 F. Supp. 363, 366 (E.D. Ark. 1994), *aff'd*, 23 F.3d 1477 (8th Cir. 1994), which explained the Rule of Necessity "provides that, if the judges who ordinarily would hear the case are likely to disqualify themselves because of their interest in its outcome, they may hear the case if, otherwise, it would not be heard at all").

Although *Buchanan* was decided one week prior to *Woodard*, Moore has failed to establish, and the Court is unable to discern, any manner in which *Woodard* undermines *Buchanan*. Indeed, the Court deems persuasive the reasoning of *Bacon v. Lee*, 549 S.E.2d 840 (N.C. 2001), in which the North Carolina Supreme Court held an inmate's procedural due process rights during clemency are unaffected by a governor's former service as attorney general.

This is especially true where, as here, the state constitution "vest[s] clemency power exclusively in the Governor and provide[s] that the Lieutenant Governor c[an] act only when the Governor [i]s unable to perform his duties." *Id.* at 855. As per the South Carolina Constitution, "[w]ith respect to clemency, the Governor shall have the power only to grant reprieves and to commute a sentence of death to that of life imprisonment." S.C. Const. art. IV, § 14. And, "[i]n

6

the case of the removal of the Governor from office by impeachment, death, resignation, disqualification, disability, or removal from the State, the Lieutenant Governor shall be Governor." *Id.* art IV, § 11.

The Court thus concludes Governor McMaster's prior service as attorney general fails to affect the constitutionality of the state's clemency procedures as applied to Moore.

Next, the Court will consider Governor McMaster's public statement on April 20, 2022, regarding his intention not to commute Moore's sentence. For context, the Court will provide the relevant dialogue between Governor McMaster and a news reporter:

> **News Reporter:** Just was wondering Governor. We've just received word that Richard Moore, whose execution date was April 29, the state supreme court has put that execution on hold. They have yet to issue a full explanation of why they've done it—that's forthcoming. Do you have any observations or comments on this case?
>
> **Governor McMaster:** No, it's a whole—I mean, the whole—the thing that led to the case, of course, is a tragedy. These situations are always difficult, but we have laws, and the laws work.
>
> **News Reporter:** And does that mean you've made up your mind on whether to commute his sentence or not?
>
> **Governor McMaster:** Yeah—uh, I have no intention to commute a sentence. The jury made their decision. In this particular case, I've seen the record and have been many hearings, up and down, appeals, motions, and it's—the death penalty is a very strong response to criminal activity, but it is a necessary response. As attorney general, I was involved in some before and have actually met with some of the families while they were awaiting executions, and I think we have been unable to find anything that brings justice and an end to the families outside of the death penalty.

https://www.youtube.com/watch?v=iGkqw-O9AGA (last accessed Oct. 21, 2024).

"[T]he heart of executive clemency . . . is to grant clemency as a matter of grace, thus allowing the executive to consider a wide range of factors not comprehended by earlier judicial proceedings and sentencing determinations." *Woodard*, 523 U.S. at 280–81 (opinion of Rehnquist, C.J.). Having extensively considered the full context of Governor McMaster's public comments,

the Court agrees his statement "I have no intention to commute [Moore's] sentence" reflects his understanding of the facts and record in the underlying judicial proceedings at the time he made that statement and fails to indicate an unwillingness or inability to "consider what might be submitted to him in the future and remain open to granting [Moore] executive clemency." Governor McMaster's Response at 12.

Moreover, Governor McMaster's statement was made nearly two-and-a-half years ago. At the time, Moore had yet to file a petition proposing any grace-oriented grounds for clemency, and the only basis upon which Governor McMaster could evaluate Moore's sentence was through his knowledge of Moore's exhaustive legal proceedings, which had thus far been unfavorable to Moore and served only to reaffirm his sentence. It makes logical sense, then, Governor McMaster had "no intention to commute [Moore's] sentence" as of April 20, 2022. https://www.youtube.com/watch?v=iGkqw-O9AGA (last accessed Oct. 21, 2024).

Additionally, the Court is persuaded sufficient time has lapsed since Governor McMaster's public statement to allow him to both reevaluate his position and properly review any clemency petition filed by Moore. *See Parker v. State Board of Pardons & Paroles*, 275 F.3d 1032 (11th Cir. 2001) (affirming the district court's denial of relief because "a long enough period" had lapsed to allow the chairman of the Georgia Board of Pardons and Paroles to "reevaluate his position [on clemency] so that he could . . . fairly review Parker's clemency application"); *In re Sapp*, 118 F.3d 460, 465 (6th Cir. 1997) (explaining a governor is unbound by his prior statements regarding clemency, as "[h]e may change his mind tomorrow, or he may grant clemency in the face of his own announced policy, without hindrance"), *abrogated on other grounds by Workman v. Bell*, 484 F.3d 837 (6th Cir. 2007).

The Court is further convinced by Governor McMaster's declaration he will "take care to understand the issues presented, including those from [his] review and consideration of applications, petitions, and requests for clemency . . . in advance of" Moore's November 1, 2024 execution date, Governor McMaster's Declaration dated Oct. 17, 2024, and by his consideration of the clemency petition filed by Freddie Eugene Owens (Owens) last month.  As per Governor McMaster, "[t]hat he ultimately decided not to commute Owens's death sentence does not mean [he] will not diligently review each inmate's petition."  Governor McMaster's Response at 12.

Even if the Court were to employ the standard set forth by Moore, however, and hold the minimal procedural safeguards guaranteed by the Due Process Clause include Moore "having his clemency application considered and evaluated by an impartial, open-minded, and unbiased decision-maker[,]" Moore's Motion at 1, the Court is confident—based on the full context of Governor McMaster's public statement and his declaration—Governor McMaster will give full, thoughtful, and careful consideration to any clemency petition filed by Moore, giving both comprehensive and individualized attention to the unique circumstances of his case.

The Court will thus reject Moore's argument Governor McMaster is unable to consider his clemency petition due to his public statement.

For all these reasons, the Court concludes Moore is unlikely to succeed on the merits of his due process claims.

As explained above, because Moore is the party seeking injunctive relief, he must satisfy all four of the requirements for a preliminary injunction to issue.  *Real Truth About Obama, Inc.*, 575 F.3d at 346.  Inasmuch as Moore is unable to meet the first requirement, the Court will decline to address the remaining arguments either for or against the granting of injunctive relief.  *See Schilling v. Schwitzer-Cummins Co.*, 142 F.2d 82, 84 (D.C. Cir. 1944) (explaining the Court is

"not require[d] or encourage[d] . . . to assert the negative of each rejected contention as well as the affirmative of those which [it] find[s] to be correct").

### V.    CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of the Court Moore's motion for temporary restraining order and preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Signed this 21st day of October 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
